UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DEBRA ELAINE BARRY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 09-311-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she was disabled as of December 31, 2000, by fibromyalgia with hip and sacroiliac pain, sciatica, and migraine headaches, capable as of that date of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff last met SSD insured status requirements on December 31, 2000, the date that she alleges she became unable to work, Finding 1, Record at 39; that, as of December 31, 2000, she had severe impairments of fibromyalgia, with hip and sacroiliac pain, and migraines, Finding 3, *id.*; that, as of December

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on April 1, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

31, 2000, she retained the residual functional capacity ("RFC") to perform at least unskilled sedentary work, Finding 6, *id.* at 40; that, on or before December 31, 2000, she retained the RFC to perform unskilled sedentary jobs that existed in significant numbers in the national economy, a finding established by Rule 201.21 of Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid"), Finding 8, *id.*; and that she, therefore, had not been under a disability at any time through December 31, 2000, her date last insured for SSD purposes, Finding 9, *id*. The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

The plaintiff seeks reversal and remand on any of three bases: that (i) the administrative law judge erred in giving the opinion of a treating physician, Garrett M. Kelly, D.O., little weight, (ii) new evidence submitted to the Appeals Council requires reversal, and (iii) the administrative law judge erred in relying solely on the Grid at Step 5, eschewing vocational expert testimony.  *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 12) at 1-5.  I find no reversible error.

### A.  Treatment of Treating Physician

The plaintiff first complains that the administrative law judge erred in affording little weight to an opinion expressed by Dr. Kelly, a treating physician, on July 23, 1997, that she "continue[d] to have the on-going full disability" and he "anticipate[d] her never being released to work[,]" and a work restriction evaluation completed by Dr. Kelly on November 4, 1998, stating that she could not lift any weight on a frequent basis, could lift only five pounds on an occasional basis, and could work zero hours in an eight-hour work day.  *See id*. at 2; *see also* Record at 197, 201.

Both the 1997 opinion and the 1998 evaluation bear on the ultimate question of whether the plaintiff was disabled, and the 1998 evaluation, in addition, addresses the issue of her RFC. Determinations of ultimate disability and RFC are reserved to the commissioner.  *See* 20 C.F.R. § 404.1527(e)(1)-(2).  With respect to those subjects, even opinions of treating sources are accorded no "special significance."  *Id*. § 404.1527(e)(3).  The administrative law judge was free to decline to adopt the 1997 opinion and/or the 1998 evaluation so long as he supplied "good reasons" for doing so.  *See id.* § 404.1527(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating

source's opinion"); *see also, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ( "SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ( "SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").

The administrative law judge supplied the requisite good reasons, stating that he accorded little weight to the disability opinion and the work evaluation because they were not supported by substantial medical evidence and were contradicted by the objective evidence of normal strength, sensation, reflexes, and range of motion.  *See* Record at 38.

On the first point, the administrative law judge correctly noted that:

1.     Although Robert B. Hansen, M.D., another treating physician, had repeatedly expressed his belief that the plaintiff had been unable since the mid-1990s to return to her duties as a police officer, he had stated that, as of September 2000, her condition was apparently stable on long-acting nonsteroidal medication, she was "capable of performing sedentary pursuits," and he had "no objection" to her engaging in a sedentary occupation.  *See id*. 38, 307.[2]

2.     Dr. Hansen's records from September 2000 indicated that the plaintiff reported that she was remaining active and working outside in her gardens, and his records from

---

[2] At oral argument, the plaintiff's counsel correctly pointed out that SSR 96-5p states: "Adjudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms." SSR 96-5p at 126.  She noted that Dr. Hansen's statements regarding capacity for "sedentary" work were made during a time that the plaintiff was involved in workers' compensation proceedings.  However, regardless of how Dr. Hansen specifically defined "sedentary," the administrative law judge supportably found that his statement that the plaintiff was capable of sedentary work contradicted Dr. Kelly's assertion that she had zero work capacity.  In addition, as counsel for the commissioner observed at oral argument, the administrative law judge relied not only on Dr. Hansen but also on a Disability Determination Services ("DDS") nonexamining reviewer, Leopold Moreno, M.D., in making the affirmative finding that the plaintiff was capable of sedentary work as defined in the relevant regulations.  *See* Record at 39.

December 2000 indicated that she was living on a farm, taking care of dogs, parrots, and horses, and writing children's books. *See id*. at 38-39, 304, 307. Moreover, the plaintiff was able to travel repeatedly from Maine to Virginia to see Dr. Hansen. *See id*. at 39, 302. The administrative law judge supportably reasoned that these activities were inconsistent with an inability to perform unskilled sedentary work as of the plaintiff's date last insured – that is, inconsistent with Dr. Kelly's disability and RFC opinions.

On the second point, the record evidence corroborates that, although the plaintiff had pain to palpation in more than 13 of 18 trigger points, consistent with her diagnosis of fibromyalgia, she was found as of the time period shortly before and shortly after her date last insured to have normal strength, reflexes, sensation, tone, and range of motion. *See, e.g., id*. at 294, 305.

There was no error in the handling of Dr. Kelly's disability opinion or work restriction evaluation.

### B.  Submission of New Evidence to the Appeals Council

The plaintiff next argues that her submission to the Appeals Council of new and material evidence in the form of a January 18, 2008, RFC opinion of Dr. Kelly retrospectively assessing her RFC as of December 31, 2000, requires reversal. *See* Statement of Errors at 3-4; Record at 9-12. She falls well short of meeting the standard for reversal and remand on this basis.

In *Mills v. Apfel*, 244 F.3d 1 (1st Cir. 2001), the First Circuit made clear that there are two circumstances in which remand based on submission of evidence subsequent to the issuance of an administrative law judge's decision is appropriate: (i) when that evidence is new and material *and* a claimant demonstrates good cause for its belated submission and (ii) when, regardless whether there is such good cause, the Appeals Council has given an "egregiously

mistaken ground" for its action in refusing review in the face of such late-tendered evidence. *Mills*, 244 F.3d at 5-6.

In her statement of errors, the plaintiff argues neither point. She merely asserts that the tardily submitted RFC opinion was "new and material." Statement of Errors at [1]. She demonstrates no good cause for its belated submission, and I discern none. Dr. Kelly had submitted an RFC opinion as early as 1998. From all that appears, the plaintiff could have supplied his updated RFC opinion prior to the issuance of the administrative law judge's decision on August 31, 2007, rather than waiting until January 2008.[3]

Nor does the plaintiff demonstrate that the Appeals Council offered an egregiously mistaken ground for refusing review in the face of the newly-tendered evidence. The Appeals Council stated the new material did "not provide a basis for changing the Administrative Law Judge's decision." Supplemental Record at 542. That is an entirely supportable conclusion. Dr. Kelly's 2008 RFC opinion, while more detailed than his 1997 disability opinion or his 1998 work restriction evaluation, was cumulative of both. *Compare* Record at 9-12 *with id*. at 197, 201. His opinion in 2008 remained that, as of her date last insured, the plaintiff was completely disabled from working, could not work a full eight-hour work day, and/or had less than a sedentary work capacity. As noted above, those points were considered and rejected for good reason by the administrative law judge.

---

[3] When asked at oral argument why the new Kelly opinion was not sooner submitted, the plaintiff's counsel stated that the plaintiff encountered difficulties obtaining it because Dr. Kelly lives in Virginia, and she travels down there to visit family only twice a year. That is not good cause. Among other things, there is no indication why the plaintiff would have had to see Dr. Kelly personally to request a retrospective opinion, as opposed to communicating with him in some other fashion.

### C.  Sole Reliance on Grid at Step 5

The plaintiff finally contends that the administrative law judge erred in relying solely on the Grid in the face of nonexertional impairments noted by Drs. Kelly, Hansen, and even Dr. Moreno.  *See* Statement of Errors at 4-5.

"Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."  Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ("SSR 96-9p"), at 156.  "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional."  *Id*.  "Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling."  *Id*.

Sole reliance on the Grid is permissible to the extent that a claimant can perform substantially the full range of work in a given exertional category (for example, sedentary work).  *See, e.g., Ortiz v. Secretary of Health & Human Servs*., 890 F.2d 520, 526 (1st Cir. 1989) ("[S]o long as a nonexertional impairment is justifiably found to be substantially consistent with the performance of the full range of unskilled work, the Grid retains its relevance and the need for vocational testimony is obviated.").

"[A]though a nonexertional impairment can have a negligible effect [on a claimant's ability to perform substantially the full range of work in a given exertional category], ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless

the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

In the body of his decision, the administrative law judge made clear that he adopted the RFC opinion of Dr. Moreno, which he deemed supported by the evidence as a whole, including the treating records and opinions of Dr. Hansen. *See* Record at 39.  The plaintiff offers no reasoned argument why the administrative law judge could not resolve conflicts in the evidence in this manner or why the RFC opinion of Dr. Moreno could not serve as substantial evidence of her RFC, *see* Statement of Errors at 4-5, and I discern none, *see, e.g.*, *Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."); *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert.  In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

It is true that, in making his findings, the administrative law judge failed to set forth the nonexertional limitations noted by Dr. Moreno, namely, that the plaintiff could only occasionally use ramps and climb stairs, never climb ladders, ropes, or scaffolds, only occasionally stoop, kneel, crouch, and crawl, and was limited in overhead reaching.  *Compare* Finding 6, Record at 40 *with id*. at 394.  Yet, the error is harmless.  The administrative law judge found that the plaintiff "had no nonexertional limitations which significantly interfered with her ability to perform [sedentary, unskilled] work on a sustained basis."  *Id*. at 39.  As counsel for the

commissioner contended at oral argument, SSR 96-9p corroborates this finding, providing, in relevant part: "Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. . . . [R]estriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." SSR 96-9p, at 159.[4]  Further, as counsel for the commissioner noted, that ruling does not indicate that a limitation in ability to reach overhead is a critical nonexertional capacity for purposes of unskilled sedentary work. *See id.* at 159-60.[5]

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum,*

---

[4] To the extent that the plaintiff's counsel contended at oral argument that the existence of a combination of nonexertional limitations required the taking of vocational testimony to establish their effect on the occupational base for the full range of sedentary work, the quoted portion of SSR 96-9p makes clear that the enumerated limitations, even in combination, have minimal impact on that occupational base.

[5] At oral argument, the plaintiff's counsel cited Social Security Rulings 83-14 ("SSR 83-14") and 85-15 ("SSR 85-15") for the proposition that the limitation in reaching necessitated the use of a vocational expert.  SSR 83-14 indicates that most sedentary jobs require good use of the hands and fingers, but is silent on the question of the importance of reaching to sedentary work.  *See* SSR 83-14, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 43, 45.  SSR 85-15 provides, in relevant part: "Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs.  Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do.  Varying degrees of limitations would have different effects, and the assistance of a VS [vocational specialist] may be needed to determine the effects of the limitations."  SSR 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 350.  The quoted passage, which pertains to jobs at all exertional levels, is not inconsistent with the conclusion that a limitation, *versus* a preclusion, in reaching in only one direction, overhead, does not necessitate the services of a vocational expert to assess its impact on the sedentary work base.

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 18th day of May, 2010.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
